UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

:

RENATO MERLO PUERTO,                                         :

:

Petitioner,              :

-against-                                           :          26-CV-405

:

BILL LEEPER, *in his official capacity as Sheriff,*          :          **MEMORANDUM &**
*Nassau County Correctional Center*; JUDITH                  :          **ORDER**
ALMODOVAR, *in her official capacity as Acting*              :
*New York Field Office Director, U.S. Immigration*           :
*& Customs Enforcement*; KRISTI NOEM, *in her*               :
*official capacity as Secretary, U.S. Department of*          :
*Homeland Security*; TODD M. LYONS, *in his*                 :
*official capacity as Acting Director of Immigration*        :
*& Customs Enforcement*; PAMELA BONDI, *in her*              :
*official capacity as Attorney General, U.S.*                :
*Department of Justice,*                                     :

:

Respondents.             :

------------------------------------------------------------------X

**NINA R. MORRISON**, United States District Judge:

Petitioner Renato Merlo Puerto filed a habeas petition challenging

Respondents' decision to detain him without an individualized bond hearing.  The

Court granted his petition, and Petitioner moved for attorney's fees under the Equal

Access to Justice Act ("EAJA").  For the reasons discussed below, Petitioner's motion

for attorney's fees is GRANTED.

## BACKGROUND

*I.     Habeas Petition*

Petitioner is a Honduran citizen who has continuously resided in the United

States since entering the country more than two decades ago, in 2004.  *See* Pet. for

1

Writ of Habeas Corpus ("Pet.") ¶ 1, ECF No. 1.  He was detained by Immigration and Customs Enforcement ("ICE") on January 22, 2026, and was held in detention without being provided a bond hearing before an immigration judge or any other individualized determination as to his eligibility for bond.  *Id.* ¶ 2.  He filed a Petition for Writ of Habeas Corpus (the "Petition") the same day, seeking relief from Respondents' constitutional and statutory violations — including immediate release from custody and attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412.  *Id.* at Prayer for Relief.  Petitioner also sought an Order to Show Cause, asking the Court to enjoin Respondents from moving him outside its jurisdiction while his habeas petition is pending.  Mot. for Order to Show Cause ¶ 7, ECF No. 4.

On January 23, 2026, the Court enjoined Respondents from moving Petitioner to a location outside the jurisdictions of the United States District Courts for the Eastern District of New York, Southern District of New York, and District of New Jersey.  Order dated Jan. 23, 2026.  The Court also ordered Respondents to show cause as to why the Petition should not be granted.  Order to Show Cause dated Jan. 23, 2026.

Respondents filed a response to the Court's Order to Show Cause on January 27, 2026, and included additional factual information regarding Plaintiff's immigration status and detention.  ECF No. 6 ("Resp.").  For instance, on September 26, 2019, the Department of Homeland Security ("DHS") served Petitioner a Form I-862 Notice to Appear ("NTA"), charging him with removability pursuant to the

2

Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), "as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.* at 1;[1] *see also* Resp. Ex. B ("NTA"), ECF No. 6-3 at 2–3.  This commenced removal proceedings against Petitioner.  *See* Resp. at 1.

Respondents also stated that they served Petitioner with a Form I-200 ("Warrant for Arrest of Alien") on January 22, 2026, before detaining him and transferring him to Delaney Hall Detention Facility in Newark, New Jersey.  *See id.* at 1–2; *see also* Resp. Ex. E ("Form I-200") at 2, ECF No. 6-6.  They detained Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A) and prepared an INA § 236(a) Initial Custody Determination to support his mandatory detention.  Resp. at 1–2; *see also id.* at Ex. F ("INA § 236(a) Determination") at 2–3, ECF No. 6-7.

As part of their submission, Respondents included, *inter alia*, Petitioner's Form I-589 asylum application and Form EOIR-42B application for cancellation of removal and adjustment of status.  Resp. Ex. A ("Form I-589"), ECF No. 6-2; Resp. Ex. C ("Form EOIR-42B"), ECF No. 6-4.  These documents indicate that Petitioner filed for asylum and withholding of removal on July 5, 2016.  *See* Form I-589 at 2.  He sought an adjustment of status in 2019, asserting that his removal would cause extreme and unusual hardship for his two children, both United States citizens.  *See* Form EOIR-42B at 2.  He has no criminal history in the United States or any other foreign country, including Honduras.  *Id.* at 6.

---

[1] Citations to page numbers use Electronic Case Filing ("ECF") pagination unless otherwise noted.

Petitioner replied to the government's response to the petition on January 27, 2026, arguing that this Court's decision in *Hyppolite v. Noem*, 25-CV-4303 (NRM), 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025) controls this case.  ECF No. 7.  Respondents conceded this point as well and acknowledged that the Court rejected their position in *Hyppolite.*  Resp. at 4.

On January 27, 2026, the Court granted the Petition, incorporating its reasoning in *Hyppolite* by reference, and finding that, because Respondents had failed to provide Petitioner with an individualized bond hearing as required by 8 U.S.C. § 1226(a), his detention was unlawful.  ECF No. 8 at 3.  As in *Hyppolite*, the Court found the mandatory detention provisions of § 1225(a)(1) and (a)(2) to be inapplicable to Petitioner — noting that he "has been living continuously in the United States [since 2004] and is not 'seeking admission' under Section 1225."  *Id.* at 4.  The Court enjoined Respondents from re-detaining Petitioner without prior authorization from the Court, and Petitioner was released on January 28, 2026.[2] *Id.* at 5–6; ECF No. 9.

## II.    *Motion for Attorney's Fees*

On February 15, 2026, Petitioner filed a motion for $2,106.52 in attorney fees under the EAJA.  ECF No. 12 ("EAJA Mot.").  On February 27, 2026, the Court

---

[2] Petitioner's release — ordered to be completed by 10:00 a.m. — was delayed by nearly an hour due to "possible internal miscommunication."   ECF No. 9. Petitioner was initially released with an ankle monitor, prompting his counsel to file a motion to enforce judgment on February 10, 2026.  ECF No. 10.  This motion was withdrawn on February 13, 2026, the day after Respondents removed the ankle monitor from Petitioner's person.  ECF No. 11.

granted Respondents' consent motion and extended their opposition deadline to March 16, 2026.  Order dated Feb. 27, 2026.

Respondents sought another deadline extension on March 16, 2026, with Petitioner's consent.  ECF No. 15.  This time, counsel for Respondents stated that they were unable to process requests for EAJA fees due to a partial government shutdown of DHS.[3]  ECF No. 15.  The Court granted the motion the next day, extending Respondents' opposition deadline to April 1, 2026.  Order dated Mar. 17, 2026.

On April 1, 2026, Respondents filed a status report, again seeking a two-week extension to their opposition deadline and citing the partial government shutdown.  ECF No. 16.  The Court ordered Respondents to file a letter "indicating (1) whether Petitioner's counsel consents to the extension request, (2) whether funding currently is available to process [Petitioner's] motion under the One Big Beautiful Bill Act (OBBBA), Pub. L. No. 119-21, 139 Stat. 72 (2025) . . . and (3) even if funding is presently unavailable to pay any such fee award, why counsel for Respondents is unable to respond to the fee application so that the Court may timely adjudicate the merits of the application notwithstanding the present partial government shutdown."  Order dated Apr. 3, 2026 (citation omitted).

Counsel for Respondents filed a letter on April 10, 2026, stating that they received guidance that — as of that week — OBBBA funds would be available to pay

---

[3] The shutdown, which began on February 14, 2026, ended on April 30, 2026. *See* "Congressional Bill H.R. 7147 Signed into Law," White House (Apr. 30, 2026), https://www.whitehouse.gov/briefings-statements/2026/04/congressional-bill-h-r-7147-signed-into-law/.

EAJA awards. ECF No. 17. In light of the guidance, Respondents committed to responding to Petitioner's motion for attorney's fees by April 15, 2026, *id.* at 1, which they ultimately did, ECF No. 18 ("EAJA Opp'n"). Petitioner filed a reply in support of his motion on April 16, 2026, requesting an increased fee award ($3,284.62) to include the time taken to prepare the reply. ECF No. 19 ("EAJA Reply").

## LEGAL STANDARD

The EAJA empowers federal courts to "award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see id.* at § 2412(d)(2)(A) (defining "fees and other expenses" to include "reasonable attorney fees" below "$125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee"). The Second Circuit has established that "a habeas proceeding challenging immigration detentions constitutes a 'civil action' under the EAJA." *Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005).

Before granting an EAJA award, the Court must conclude:

(1) that the claimant [is] a "prevailing party"; (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990).

6

If Petitioner "demonstrate[s] that [he] is a prevailing party under the EAJA, the burden shifts to the government to demonstrate that its litigation position was 'substantially justified.'" *Commodity Futures Trading Comm'n v. Dunn*, 169 F.3d 785, 786 (2d Cir. 1999) (per curiam). The prevailing party is the one to whom "the court grants relief . . . based on 'an assessment of the merits' and thus 'unquestionably' and 'materially alter[s] the existing legal relationship between the parties." *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 505–06 (S.D.N.Y. 2025). Furthermore, "[a] position is substantially justified if it 'had a reasonable basis in both law and fact.'" *Id.* at 506 (quoting *Vacchio*, 404 F.3d at 674).

## DISCUSSION

Respondents do not dispute that Petitioner is the prevailing party in this action, that his attorney's fees motion is timely, or that no special circumstances exist that would make a fee award unjust.[4] They raise a brief objection to Petitioner's hourly rate calculation, which Petitioner concedes in his reply.[5] *See* EAJA Opp'n at 12; EAJA Reply at 6. But the crux of the parties' dispute concerns whether Respondents' legal position was substantially justified at the time the parties litigated the Petition.

---

[4] Respondents also do not dispute that Petitioner is a "party" under the EAJA, *i.e.*, "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B).

[5] Petitioner adjusted the EAJA $125 hourly rate cap for the cost of living in the New York region, by using 155.7 as the NY-NJ-PA Consumer Price Index ("CPI-U") figure for March 1996. *See* EAJA Mot. at 4–5. The government argued — and Petitioner did not dispute — that the correct figure for March 1996 was 166.5. EAJA Opp'n at 12.

Petitioner argues that neither Respondents' conduct in unlawfully detaining him nor Respondents' legal arguments in defending that detention were substantially justified.  *See* 28 U.S.C. § 2412(d)(2)(D) (noting that "position of the United States" includes "the position taken by the United States in the civil action" and "the action or failure to act by the agency upon which the civil action is based").  Specifically, he argues that a constitutional deprivation — like the denial of due process Respondents caused him to endure here — cannot be substantially justified.  EAJA Mot. at 3 (citing *Meinhold v. U.S. Dep't of Def.*, 123 F.3d 1275, 1278 (9th Cir. 1997)).  Petitioner further contends that Respondents' litigation position rested entirely on a legal theory that had been unanimously rejected by all the judges in this District who had considered the issue at the time Respondents filed their response to the Petition, including by this Court in *Hyppolite.  Id.* at 3–4.

At the time Respondents filed their response to the Petition and the instant response to Petitioner's fee application, the Second Circuit had not yet addressed whether 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention provisions applied to persons like Petitioner.  However, Respondents cite recent decisions from the Fifth and Eighth Circuit Courts of Appeals — along with those by a distinct minority of district courts around the country — to argue that their position before this Court was substantially justified.  *See* EAJA Opp'n at 7–10.  They argue that this litigation concerned a "novel [issue] with little to no precedent," and urge the Court to focus on "whether the government was substantially justified in believing the law not to have

foreclosed its position." *Id.* at 8 (first quoting *Michel v. Mayorkas*, 68 F.4th 74, 78 (1st Cir. 2023) and then *Dunn*, 169 F.3d at 786).

In reply, Petitioner argues that Respondents failed to demonstrate that — or even address whether — ICE's underlying conduct in detaining Petitioner was substantially justified.  EAJA Reply at 3.  He contends that Respondents waived their argument on this point, and thus, failed to carry their burden regarding the substantial justification for their prelitigation position.  *Id.*  Petitioner's reply also supplements his earlier argument against Respondents' litigation position, by citing recent decisions from judges within this Circuit that awarded EAJA fees in similar immigration habeas cases.  *Id.* at 5–6 (citing *L.R.C. v. Maldonado*, 25-CV-6825 (AMD), 2026 WL 946787, at *5 (E.D.N.Y. Apr. 7, 2026); *Cornejo Guanuquiza v. Francis*, 25-CV-10267 (RA), 2025 WL 3678121, at *2 (S.D.N.Y. Dec 18, 2025); *Yao v. Almodovar*, 813 F. Supp. 3d 461, 478 (S.D.N.Y. Dec. 17, 2025); *Rivera Esperanza v. Francis*, No. 25-CV-8727 (RA), 2025 WL 3513983, at *9 (S.D.N.Y. Dec. 9, 2025); and *Barco Mercado*, 811 F. Supp. 3d at 506).

I.      *Respondents' Position Was Not Substantially Justified*

Respondents defended the legality of Petitioner's detention by arguing that 8 U.S.C. § 1225(b)(2)(A) imposes mandatory detention on individuals "present in the country without admission," because they are "applicants for admission."  EAJA Opp'n at 8.  Whether or not Respondents invoked this statutory interpretation as justification for ICE's original conduct or its legal defense during these writ proceedings, it is clear that the same inquiry — whether Respondents' interpretation

of U.S.C. § 1225(b)(2)(A) as applied here was "substantially justified" — controls both questions. Thus, the Court will presume (without deciding) that Respondents have not waived their arguments that ICE's underlying conduct was substantially justified and will consider the merits in both contexts.

The Court has no difficulty finding that Respondents have failed to establish that their position was substantially justified, and thus, Petitioner's counsel is entitled to a fee award under the EAJA.

Respondents are correct that "[t]he issue for EAJA purposes is not what the law is when the EAJA application is made" but instead "whether the government was substantially justified in believing the law not to have foreclosed its position during the underlying litigation." *See* EAJA Opp'n at 8 (quoting *Dunn*, 169 F.3d at 786). At the same time, Respondents rely heavily on many cases decided *after* the Petition was filed and the writ was granted in this case. The Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (issued on February 6, 2026) and the Eighth Circuit's decision in *Avila v. Bondi* 170 F.4th 1128 (8th Cir. 2026) (issued on March 25, 2026), were both decided after the Court granted the Petition in this action on January 27, 2026. So too were all but one of the district court decisions from other circuits. *See* EAJA Opp'n at 9 n.1. It is worth noting that none of these decisions would be binding upon this Court, even if they were decided earlier.

Regardless, insofar as the reasoning of these decisions may inform whether the government's legal position was, in hindsight, "substantially justified" or not, Respondents are certainly free to rely upon that reasoning. So, too, is Petitioner free

10

to rely on the analysis set forth in later decisions that flatly rejected Respondents' interpretation of the statute — again, insofar as the reasoning of those decisions inform the question of whether Respondents' position was substantially justified at the time of the earlier, underlying litigation.

First, as to the universe of authority that predated these writ proceedings: at the time this Court granted the Petition, Respondents' position was supported by only a handful of decisions from district courts within this Circuit, and none from within this District.  *See* EAJA Opp'n at 9.  It directly contradicted this Court's decision in *Hyppolite*, as the government conceded (while maintaining that it respectfully disagreed with that decision).  And it advanced a legal theory that had been rejected in roughly 96% of cases nationwide as of February 2026.[6]

Moreover, since the fee motion was fully briefed, the Second Circuit decided *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026).  Analyzing the statutory text, history, context, and purpose of Sections 1225 and 1226, the Second Circuit resoundingly rejected the legal position that Respondents took before this Court in the instant case. In *Cunha,* the Court found that 8 U.S.C. § 1225(b)(2)(A) plainly does not apply to noncitizens like Petitioner, "who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter."  *Cunha,* 175 F.4th at 69.  Instead, as the

---

[6] *See* Kyle Cheney, "Even Trump's Own Appointees Are Ruling against ICE's Mass Detention Strategy," POLITICO (Feb. 12, 2026), https://www.politico.com/news/2026/02/12/donald-trump-judges-mandatory-detention-rulings-00778256?utm_medium=twitter&utm_source=dlvr.it (noting that courts rejected Respondents' position "in at least 3,500 cases" and agreed with that position "in about 150 cases").

*Cunha* court explained, 1225(b)(2)(A)'s mandatory-detention requirement only applies to the far more limited class of "(1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization." *Id.* at 74.

Importantly for purposes of the instant motion, the Second Circuit made clear that its rejection of Respondents' position did not involve a novel or difficult issue of statutory interpretation. Instead, the *Cunha* Court concluded — in no uncertain terms — that "the government's attempt to muddy these textually clear waters defies the statute's context, structure, history, and purpose." *Id.* at 96. Indeed, the *Cunha* opinion was replete with findings making clear that Respondents' claimed interpretation of the statute was far from "substantially justified." *See, e.g., id.* at 73 (finding that "the government's proposed statutory construction suffers from a fatal defect" in wholly "disregard[ing]" the plain meaning of one of Section 1225(b)(2)(A)'s two core "requirement[s]" set forth in the text); *id.* at 76–77 (finding that the government's claim as to the "ordinary meaning" of the words used in the statute "is not even persuasive on its own terms"); *id.* at 78 ("contrast[ing]" the government's position with Petitioner's, as only the latter "provides a clear explanation for what role [the relevant] terms play in the statute"); *id.* (rejecting the government's position as inconsistent with a "commonsense reading" of the "plain meaning" of the statutory text); *id.* at 83 (rejecting the government's argument that its position is supported by other provisions of the statute, and finding that "no reasonable interpretation [of the text] supports the government's present understanding of Section 1225(b)(2)"); *id.* at

12

93 (reiterating that "the unambiguous language of the statute unquestionably favors Petitioner's interpretation" and rejecting the government's argument that courts should not consider decades of consistent Executive Branch practice that contradicts its current position, as "it is hard to fathom how the plain text could be read to somehow unambiguously favor the government").

The *Cunha* Court also made clear that its interpretation of the statutory text did not take place in a precedential vacuum. *See, e.g., id.* at 84 (noting that "the Supreme Court has long understood [the statute] exactly how Petitioner does" (citing *Jennings v. Rodriguez,* 583 U.S. 281, 287 (2018)).[7]

Finally, whether Respondents' position here was "substantially justified" at the time they filed their response to Merlo Puerto's petition is further informed by the reasoning of the concurring opinion of Judge Cabranes in *Cunha*, who joined the panel's opinion in full, but wrote separately to underscore the lack of merit in the government's claims in equally blunt terms. *See id.* at 98 (Cabranes, J., concurring) ("No one can seriously contend that Petitioner is 'seeking admission' twenty-one years after he entered the country."); *see also id.* at 99 (describing how the government's position conflicts with decades of executive branch practice interpreting the statute to only require discretionary detention in cases such as this one and stating that, "[i]f Respondent is right that in 1996 Congress ordered the largest mass detention in

---

[7] As the *Cunha* Court explained, it matters little that the relevant statutory analysis in *Jennings* might be construed as dicta, for "it is well settled that '[lower courts] are obligated to accord great deference to Supreme Court dicta, absent a change in the legal landscape.'" *Id.* at 85 (citation omitted). Since "[t]he government points to no change in the legal landscape, . . . we afford great deference to the Court's description of the statutory scheme in *Jennings*." *Id.*

American history, the world would have likely noticed sooner. Small wonder that some 90 percent of the hundreds of district judges across the land who have heard Respondent's argument have rejected it.").

At bottom, Respondents' position in this case ran directly afoul of the statutory text upon which they relied. It was not then — and is not now — substantially justified.

Further, as this Court found in *Hyppolite* (with the interpretation of the relevant constitutional principles in that decision already incorporated by reference in this case), Petitioner's paramount liberty interests were at stake, and the lack of an individualized bond hearing created an outsized risk of erroneous deprivation. *See* ECF No. 8 at 4–5; *Hyppolite,* 808 F. Supp. 3d at 490–93. The government's interests were not meaningfully advanced by denying a bond hearing to Petitioner — who is a father of two, and who has resided in the United States for over twenty years without any criminal history. *See* ECF No. 8 at 5; *Hyppolite,* 808 F. Supp. 3d at 493–94. Respondents' conduct and litigation position denied Petitioner the due process to which he was entitled under the plain text of the INA and decades of the statute's application. Accordingly, Petitioner is entitled to fees under the EAJA.

## II.    Reasonable Fees

Before the Court can grant an EAJA award, Petitioner must demonstrate that the requested fees are reasonable. *See L.R.C.,* 2026 WL 946787, at *3. Petitioner's counsel submitted billing records that included: 2.50 hours for drafting and filing the Petition and motion for Order to Show Cause; 1.50 hours for research and

14

correspondence with the Court; 1.50 hours for research, drafting, and filing the motion to enforce judgment; and 2.00 hours for research, drafting, and filing the EAJA fees motion. EAJA Mot. Ex. B at 2–5, ECF No. 12-2. He also requested an increase of 5.00 hours for the time spent researching and drafting Petitioner's reply. EAJA Reply Ex. A at 6, ECF No. 19-1. The parties agree that the correct hourly rate is $262.77 per hour. EAJA Reply at 6.

Petitioner's billing entries are arguably block-billed. But, while "block billing is not preferred, it is permissible so long as the records allow the court to conduct a meaningful review of the hours requested." *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d. Cir. 2017). The Court otherwise finds Petitioner's requested EAJA fee award to be reasonable. Petitioner's counsel's advocacy was efficient and vigorous; he filed the Petition the day Petitioner was detained, secured relief within a week, and then succeeded in advocating for Respondents to remove the ankle monitor imposed upon Petitioner when he was first released. The extremely time-sensitive nature of the underlying action (in which even brief delays in filing the writ due to administrative tasks would have resulted in his client's continued unlawful detention and his potential deportation, which would have mooted the writ claims) also provides context for the lack of contemporaneous billing records. Counsel also timely filed the present motion and submitted a reply the day after Respondents filed their opposition — despite Respondents taking roughly a month and a half to do so. The Court finds 12.5 hours at a $262.77 hourly rate to be reasonable, *see L.R.C.*, 2026 WL 946787, at *5, and awards Petitioner $3,284.62 in fees under the EAJA.

15

## CONCLUSION

For the reasons set forth above, Petitioner's motion for EAJA fees is GRANTED. Petitioner is awarded $3,284.62 in attorney's fees pursuant to the EAJA, 28 U.S.C. § 2412.

**SO ORDERED.**

Dated: June 4, 2026                              /s/ Nina R. Morrison
      Brooklyn, New York                    Nina R. Morrison
                                      United States District Judge

16